Copies to: Judge
AUSA – Special Proceedings
Dft.

*Let it be filed.*
*Judge C Kollar-Kotelly 5/1/08*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANDALL CASSEDAY,     ) | |
|         Petitioner,   ) | Criminal Case No. 06-329(CKK) |
|                       ) | Civil Case No. 08-3?? |
| vs.                   ) | |
|                       ) | **FILED** |
| UNITED STATES OF AMERICA, ) | MAY 0 1 2008 |
|         Respondent.   ) | Clerk, U.S. District and Bankruptcy Courts |

AMENDED 28 U.S.C. §2255 MOTION TO VACATE, SET ASIDE, OR
CORRECT SENTENCE BY A PRISONER IN FEDERAL CUSTODY PURSUANT TO
RULE 15 OF FEDERAL CIVIL JUDICIAL PROCEDURE

   **NOW COMES** RANDALL CASSEDAY, ("Petitioner"), pro-se, in the above entitled matter, respectfully submits this Amended Pleading to his original 28 U.S.C. §2255 Motion, pursuant to Rule 15 of the Federal Civil Judicial Procedure and Rules as additional documents and evidence became available in a restricted and limited environment. In support of this request, Petitioner respectfully refers this Court to the arguments and authorities set forth in his original 28 U.S.C §2255 Motion.

ISSUES PRESENTED FOR CONSIDERATION

I. WHETHER DISTRICT COURT VIOLATED RULE 11 WHEN IT:

   C. FAILED TO INFORM PETITIONER OF THE REASONS FOR THE
      SENTENCE PACKAGE IN VIOLATION OF RULE 11(b)(1)(M)
      AND 18 U.S.C §3553(c)?

C. SUMMARY

   On February 15, 2007, Petitioner appeared before the Honorable Colleen Kollar-Kotelly for sentencing based on the written plea agreement dated December 21, 2006, which specified a term of imprisonment of 60 months for Count 2, 18 U.S.C. §2252(a)(4)(B), and 30 months for Count 3, a DC offense, O.P.S.A. 16-445, for an aggregate total of 90 months imprisonment. During

-1-

the sentencing proceedings, the Court did not inform Petitioner of the reasons, either orally or written, for the sentence as required by Rule 11(b)(1)(M) and 18 U.S.C. §3553(c). Thus requiring Petitioner's sentence to be vacated or corrected because the reasons for the particular sentence were never stated nor written as required.

## DISCUSSION

A reading of Rule 11(b)(1)(M) reveals:

(b)(1) **Advising and Questioning the Defendant.**
Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands the following:

(M) the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart from those guidelines under some circumstances; (from 2007 Edition Federal Criminal Code and Rules of which was in effect at time of this instant case).

In addition, 18 U.S.C. §3553(c) states:

(c) **Statement of reasons for imposing a sentence.**
The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--

(2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment, except to the extent that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32. In the event that the court relies upon statements received in cameral in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements.

Assuming arguendo that both the lack of stated reasons by the Court in open court during sentencing and at the plea

colloquy, and the lack of argument by the Government to support the consecutive sentence and the length of sentence imposed on Petitioner by the plea agreement, serves to undermine the intent of the United States Sentencing Guidelines ("USSG") by placing a sentence, albeit agreed upon, upon the Petitioner in violation of the standards, rules, and definitions set forth in 18 USCS Appx §3D1.2, §5G1.2(c), 5G1.3(b), and 6B1.2(c).

An examination of the USSG reveals the advisory nature of the Guidelines, as the USSG are now to be utilized, based on the decision in <u>Booker v. Washington</u>, 543 US 220 (2005). By definitions explained in 3D1.1:

> "Grouping occurs when offenses so closely interrelated, group them together for purposes of the multiple-count rules, and use the offense level for the most serious offense in that group."

Further, §3D1.1 states:

> "...counts that are grouped together are treated as constituting a single offense for purposes of the guidelines." (18 USCS Appx §3D1.1)

Additionally, application of §5G1.3(b) requires that "the term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction...the sentence for the instant offense shall be imposed as follows:

> 2). the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

According to the USSG definition of relevant Conduct under §1B1.3:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant...
> (2) solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts...that were part of the same course of conduct or common scheme or plan as the offense of the conviction,..."

-3-

A sister circuit has defined "conduct" as applied to multiple conduct. "...the use of the word 'conduct' also indicates that the focus should not be on the legal definitions of the offenses, but rather on whether the conduct underlying the first offense was also the basis for prosecution of the second." US v Williams, 260 F3d 160 (2nd Cir 2001).

According to §5G1.2,

> "the sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed, and (2) requires that such term of imprisonment be imposed to be run consecutively to any other term of imprisonment shall be determined by that statute and imposed independently".

A review of the statutes, 2252(a)(4)(B) and DC 16-445 reveals no requirement nor determination, by statute, of the type of sentence to be imposed independently. Further,

> (c) If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, the the sentences on all counts shall run concurrently, except to the extent otherwise required by law."

The Commentary explains

> "This section applies to multiple counts of conviction (1) contained in the same indictment or information,...""The combined length of the sentences ("total punishment") is determined by the Court after determining the adjusted combined offense level and the Criminal History Category." "Except as otherwise required by subsection (e)(Career Offenders) or any other law, the total punishment to be imposed on each count and the sentences on all counts to be imposed on each count and the sentences on all counts are to be imposed to run concurrently to the extent allowed by the statutory maximum sentence of imprisonment for each count of conviction....and be made to run concurrently with all or part of the longest sentence."

In application of terms of any of the USSG mandates, Petitioner is not seeking a downward departure, rather,

Petitioner is seeking to correct a sentence imposed by the plea agreement that does not follow the USSG definitions and standards per se.

## POSSIBLE EFFECT ON PLEA AGREEMENT

A sentence arising from a Rule 11(c)(1)(C) plea does not result from the determination of an appropriate guidelines offense level, but rather from the agreement of the parties. (FRCrimP 11(c)(1)(C)). However, a court is "free to consider the applicable Sentence Guideline range" in deciding "whether to accept an agreed-upon sentence..." US v Heard, 359 F3d 544,549 (DC Cir 2004). Heard was argued based on a Rule 11(e)(1)(C) plea agreement, similar to the 11(c)(1)(C) in Casseday. "Nontheless, because sentences under Rule (e)(1)(C) are not wholly divorced from sentencing guidelines calculations" (Heard at 549), Casseday should have followed the Sentencing Guidelines as explained above. Quoting Witte v United States, 515 US 389, 404-05 (1995), "Significant safeguards built into the Sentencing Guidelines therefore protect Petitioner against having the length of his sentence multiplied by duplicative consideration of the same conduct." (Heard at 551).

A sister circuit ruled in US v Barron, 172 F3d 1153, 1157 (9th Cir. 1999) that "the District Court did not need to construct an argument against the agreement (Rule 11(e)(1)(C)). The District Court needed only to resentence. As a practical matter, in §2255 proceedings judgments are vacated and reinstated to cover only the valid convictions remaining. "Nor is there any reason for reducing §2255 remedies to two (discharge or new trial) when a plea agreement is in force...the District Court can

distinguish the convictions that are still valid, reinstate the judgment, and resentence." Id at 1158.

Petitioner further argues the District Court is free to correct a defect in the original sentence on multiple convictions when the convictions are part of the overall sentencing package in order to bring the sentences into complliance with statutes, but the Court cannot increase the sentence where the defendant (Petitioner) has legitimate expectation of finality and is otherwise not on notice that the sentence may permissibly be increased. US v Tolson, 935 FSupp 17 (DC Cir. 1996).

Petitioner made requests to counsel to verity and argue the validity of the consecutive construction of the sentence, to challenge the sentence based on sentencing guidelines, as well as factors set forth in 18 USC §3553(a). However, Counsel informed Petitioner on more than one occasion that the Government could charge him with a crime carrying a higher sentence, thus inducing Petitioner to accept the plea agreement with the sentencing package construed outside the range of sentencing defined in the USSG. In failing to object to or point out the sentencing package construction to the Court, Counsel's performance was deficient, rendering ineffective assistance of counsel, prejudicing Petitioner to an additional term of imprisonment above the criminal history determination.

 Further, 18 USCS Appx 6B1.2(c) states:

> In the case of a plea agreement that includes a specific sentence (Rule 11(c)(1)(C)), the court may accept the agreement if the court is satisfied either that: (a) the agreed sentence is within the applicable guideline range; or (b) (A) the agreed sentence departs from the applicable guideline range for justifiable

reasons; and (B) those reasons are specifically set forth in writing in the statement of reasons or judgment and commitment order.

A review of the judgment and commitment order reveals no such written reasons compelling Petitioner to the specified sentence as spelled out in the plea agreement. Additionally, 18 USC §3553(c) states, in part, "The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence...". Again, justification for and proof of a "severe sentence" was neither offered in the Government's Sentencing Memorandum nor in the Court's sentencing proceedings.

## CONCLUSION

WHEREFORE Petitioner prays that this Honorable Court vacate or set aside his sentence because the Court failed to state neither in open court nor in the written judgment and commitment order the reasons for the sentence as specified in the plea agreement, and: (1) allow him to plead anew; (2) vacate and resentence based on sentencing guidelines; or (3) grant any other relief that it deems just and necessary to remedy this violation.

11. IS ACCEPTANCE OF EVIDENCE PURSUANT TO AN ILLEGAL SEARCH IN VIOLATION OF THE FOURTH AMENDMENT PROTECTION AGAINST ILLEGAL SEARCH AND SEIZURE?

## SUMMARY

Petitioner pled guilty to 18 USC §2255 §(a)(4)(B), a federal charge, Count 2 of a plea agreement dated December 21, 2006. Petitoner entered into the plea agreement, induced by his Counsel and relying on Counsel's advice, after a compact disc was discovered in a desk in Petitioner's office (not in plain view) by a Special Police Officer ("SPO"), after a search was conducted

and concluded by Government authorities and a search warrant authorizing that search was executed. It was during this subsequent search conducted by "a staff member", an SPO working for the Washington Times after the original search was completed by Secret Servic and Metropolitan Police. The next day, after the first search had been completed, this security staff member who is an SPO, acting on behalf of the Government authorities, cleared the office and found a compact disc in a desk drawer, not in plain view, and thereafter turned it over to a Detective from the Metropolitan Police Department who turned it over to Secret Service for analysis. See Statement of Facts dated October 31, 2006. This second search, and handling of the disc, conducted after execution of the search warrant by an SPO acting under direction of government authorities, violated the Petitioner's Fourth Amendment protections against Illegal Search and Seizure, thus requiring the Exclusionary Rule and bringing into question the reliability of evidence collected by an SPO subsequent to the execution of a search warrant.

## DISCUSSION

The claim of a federal prisoner that he was convicted on evidence obtained in an unconstitutional search and seizure is cognizable in a post-conviction proceeding under 28 USC §2255. Kaufman v United States, 394 US 217 (1969). The Fourth Amendment protection against unreasonable and illegal searches and seizures protects citizens against government searches and seizures that fall outside the scope of what is allowed by law. The Warrant Clause requires a Warrant to be issued upon probable cause, see Illinois v Gates, 462 US 213 (1983), and is determined by

totality of circumstances. <u>Ornelas v United States</u>, 517 US 690 (1996). The requirement for probable cause requires a "fair probability" that contraband will be found in a particular place. <u>Gates</u> at 548. However, evidence collected as a result of a violation of the Fourth Amendment is sanctioned under the Exclusionary Rule, and is to be excluded at trial. <u>Weeks v United States</u>, 232 US 383 (1914), <u>United States v McSurely</u>, 473 F2d 1178, 1195 (DC Cir 1972). The Exclusionary Rule is triggered by searches conducted by government agents, thereby affording Fourth Amendment protections against government intrusion of privacy. The Fourth Amendment generally does not protect against unreasonable intrusions by private individuals, but does prohibit such intrusions by private individuals who are acting as government instruments or agents. <u>United States v Reed</u>, 15 F3d 928 (9th Cir 1994), USCA Const. Amendment 4.

In the instant case a search of Petitioner's office was conducted pursuant to a search warrant issued to Secret Service subsequent to Petitioner's arrest and detention in the D.C. jail. At that time, Petitioner's office at The Washington Times was secured by yellow police tape and by the placement of Officer Gail Moore outside Petitioner's office, preventing any access to the office by any Washington Times staff. According to a Statement of Facts submitted in support of the Information charging Petitioner, the search was conducted on September 27, 2006, and was completed. On September 28, 2006, the affidavit states a Washington Times staff member entered the office to secure Petitioner's personal belongings. That staff member, Ms. Moore, an SPO working for the Times, acted under direction of the

government authorities to secure the office to assure no entry would be made by anyone unauthorized. Ms. Moore found the compact disc in a desk drawer, not in plain view of the original search. Ms. Moore then turned the disc over to a detective with the Metropolitan Police Department who took possession for examination and processing. What the Fourth Amendment protects against unwarranted governmental intrusion is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home, or his office, his hotel room, or his car. Hoffa v United States, 385 US 293, 381 (1966).

## AN SPO IS AN AGENT OF THE GOVERNMENT IF ACTING UNDER ITS AUTHORITY

The question at hand regarding invoking of the Exclusionary Rule requires analysis of the function of a Special Police Officer in the District of Columbia. This authority is explained in Limpuangthip v United States, 932 A2d 1137 (DC 2007): "in determining whether state action exists, we have not focused on the fact of an arrest alone. We determined whether they (SPO's) were public officers by focusing broadly on whether they were performing their 'police' functions." See Lucas v United States, 411 A2d 360, 362 (DC 1980). In Lucas, the Court found "when they are performing their polic functions, they are acting as public officers and assume all the liabilities thereto." In Griffin v Maryland, 378 US 130 (1964), the Supreme Court found that an SPO, working at a private amusement park, was a state actor because he acted pursuant to his state authority, i.e., he acted like a regular police officer rather than a private employee, when he

-10-

arrested four African-Americans for trespassing, took them to a Montgomery County police station, and filled out a warrant as a deputy sheriff.

In the instant case, Ms. Moore, who is privately employed by the Washington Times and is also commissioned as an SPO in the District of Columbia, acted under direction of state agents in securing the office and clearing the office, providing a nexus of her actions to official state responsibilities. Ms. Moore's handling of the compact disc **subsequent** to execution of and returning of the search warrant violates Fourth Amendment protections against illegal searches and seizures, when she acted not as a private citizen, rather as an agent of the state, further sweeping the office after the legal search was concluded.

In <u>Williams v United States</u>, 341 US 97 (1951), the Supreme Court ruled an SPO acted "under color of law" when interrogating individuals in the presence of a police officer. In this case, the Court took notice of the SPO's conduct, "that he acted under authority of Florida law...that he was asserting the authority granted him and not acting in the role of a private person." Id at 100. Likewise, Ms. Moore acted under the authority of the state (District of Columbia) when she acted on their instructions to secure the office, and then later cleared and searched Petitioner's office **after** the search warrant was executed. Thus, this search and the poisonous fruits obtained as a result should have been excluded unless an additional warrant would have been obtained based on probable cause of the compact disc, if probable cause would have existed notwithstanding the conclusion of the original search warrant.

## CONCLUSION

WHEREFORE, Petitioner prays that this Honorable Court vacate or set aside its judgment and: (1) allow him to file a timely notice of appeal; (2) conduct an evidentiary hearing to fully develop the record to determine if the evidence was obtained illegally, or (3) grant any other relief that this court deems just and necessary in the interest of justice.

                                Respectfully submitted,

                                *Randall Casseday*
                                Randall Casseday
                                USM 28791-016
                                FCI Loretto
                                Loretto, PA  15940

Submitted this 23 day of April, 2008.

## CERTIFICATE OF SERVICE AND MAILING

      I, **RANDALL CASSEDAY, HEREBY SWEAR:** under penalty of perjury pursuant to 28 U.S.C. §1746(2), that a true and complete copy of the foregoing motion was placed in the mailbox of the FCI Loretto this __23__ day of April, 2008, First Class postage prepaid addressed to the following:

CLERK OF THE COURT
Nancy Mayer-Whittington, District Clerk
E. Barrett Prettyman U.S. Courthouse
333 Constitution Ave. NW
Washington, DC  20001

Margaret J. Chriss, AUSA
Office of the United States Attorney
Special Proceedings Division
555 4th Street
Washington, DC  20530

 

*Randall Casseday*
Randall Casseday, Petitioner
USM 28791-016
FCI Loretto
P.O. Box 1000
Loretto, PA  15940