# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RANDALL CASSEDAY,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Criminal Action No. 06-329 (CKK)
Civil Action No. 08-322 (CKK)

## MEMORANDUM OPINION
(July 13, 2010)

Presently before the Court is Petitioner Randall Casseday's [28] Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. Casseday pled guilty to one count of Possessing Material Constituting or Containing Child Pornography, 18 U.S.C. § 2252(a)(4)(B), and one count of Enticing a Child (attempted), Section 216(d) of the District of Columbia Omnibus Public Safety Congressional Review Emergency Act of 2006, Act 16-445, amending D.C. Code § 22-3010. On February 15, 2007, this Court sentenced Casseday to a total of 90 months' imprisonment pursuant to a plea agreement voluntarily entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). On February 19, 2008, Casseday filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, claiming that the Court violated Federal Rule of Criminal Procedure 11 during sentencing by failing to ensure that the guilty plea was voluntary and to determine that there was a factual basis for the plea. He also claimed that his counsel was constitutionally ineffective for failing to file a notice of appeal. On May 1, 2008, Casseday filed an amended § 2255 motion claiming that the Court violated Rule 11 when it failed to inform him of the reasons for his sentence as required by 18 U.S.C. § 3553(c)

(N)

and claiming that his conviction was based on evidence seized in violation of the Fourth Amendment. The Government filed a consolidated opposition to Casseday's motion and amended motion, and Casseday filed a response brief. Casseday also filed supplemental materials on April 2, 2009, July 30, 2009, and August 26, 2009, in which he appears to assert additional claims pertaining to alleged constitutional violations during his arrest. Casseday also claims in his last supplemental filing that he was coerced by his counsel into answering one of the Court's questions during the plea colloquy affirmatively, thus professing his intent during an online chat to entice a person purporting to be a minor child into performing a sexual act.[1]

For the reasons explained below, the Court finds that the Fourth Amendment claim asserted in Casseday's amended § 2255 motion and any claims that may be asserted in Casseday's supplemental pleadings pertaining to Casseday's arrest and searches are untimely and must be dismissed. Because of conflicting testimony in the record, the Court shall hold an evidentiary hearing on Casseday's claim that his counsel was constitutionally ineffective for failing to file a notice of appeal. During the hearing, the Court shall also hear testimony from Casseday's counsel regarding his duress claim, to which the Government has not formally responded. The Court finds that Casseday's claims that the Court violated Rule 11 by failing to ensure the plea was voluntary (apart from his duress claim regarding his counsel) and ascertain a factual basis for the plea are clearly contradicted by the record and may be dismissed as meritless

---

[1] Casseday has also filed a "Response to the Government's Motion/Request to Deny Leave to File Quo Warranto and Motion to Order Government to Respond to Quo Warranto," *see* Docket No. [59], which the Court construes as a motion to reconsider the Court's denial of his [54] "Motion for Leave of Court to File Quo Warranto Pursuant to Rule(s) 901 and 902 of the Federal Rules of Criminal Procedure." *See* Min. Order (Apr. 20, 2009). The Court finds that Casseday has failed to assert any appropriate factual or legal basis for reconsideration and shall therefore deny the motion.

without an evidentiary hearing. The Court shall hold in abeyance Casseday's claim that the Court failed to provide a written statement of reasons for the sentence pending further briefing from the Government.

## I. BACKGROUND

*A.     Petitioner's Arrest, Plea Agreement, and Sentencing*

Petitioner Randall G. Casseday was arrested by the District of Columbia Metropolitan Police Department ("MPD") on September 26, 2006, following an online sting operation during which Casseday sent images of child pornography to an undercover MPD officer posing as a 13 year old girl. On October 31, 2006, Casseday was charged by Information with three counts: (1) Enticing a Minor in violation of 18 U.S.C. § 2422(b); (2) Possessing Material Constituting or Containing Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B); and (3) Enticing a Child (attempted) in violation of the D.C. Omnibus Public Safety Congressional Review Emergency Act of 2006, Act 16-445, § 216(d).[2]

### 1.     Written Plea Agreement

On October 31, 2006, the United States sent a written plea agreement to Casseday's

---

[2] Section 216(d) of the D.C. Omnibus Public Safety Congressional Review Emergency Act of 2006 temporarily amended D.C. Code § 22-3010(b) to provide as follows:

> Whoever attempts (1) to seduce, entice, allure, convince, or persuade any person who represents himself or herself to be a child or minor to engage in a sexual act or contact, or (2) to entice, allure, convince, or persuade any person who represents himself or herself to be a child or minor to go to any place for the purpose of engaging in a sexual act or contact shall be imprisoned for not more than 5 years or may be fined in an amount not to exceed $50,000, or both.

*See* 53 D.C. Reg. 6443, 6467 (Aug. 11, 2006). The only substantive change between this language and the current § 22-3010(b) is a requirement that the defendant be at least 4 years older than the purported age of the child or minor. *See* D.C. Code § 22-3010(b).

defense counsel, Assistant Federal Public Defender Danielle Jahn. *See* Plea Agreement, Docket No. [15]. The plea agreement provided that Casseday would agree to admit guilt and enter a plea of guilty to Counts Two (Possession of Child Pornography) and Three (Enticing a Child), punishable by up to ten and five years, respectively. *See id.* ¶ 1. The United States agreed to dismiss Count One of the Information, the federal enticement charge, at sentencing. *Id.* ¶ 10. In addition, the Government agreed not to bring additional charges against Casseday in connection with the conduct described in the Statement of Facts to be signed by the parties and submitted to the Court. *Id.* The plea agreement provided that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties would agree to a sentence of 30 months on the Possession of Child Pornography Charge and a sentence of 60 months on the Enticement charge, to be served consecutively, resulting in an aggregate sentence of 90 months imprisonment, followed by a term of at least ten years supervised release. *Id.* ¶ 3. The agreement stated that if the Court rejected the plea, either side could withdraw from the plea and the Government would have "full and complete discretion to file a Superseding Information or to seek a Superseding Indictment prior to the defendant's entering a guilty plea to any criminal offense in this case." *Id.*

On the last page of the plea agreement there is a signature page with a heading entitled "Defendant's Acceptance." The paragraphs under this heading read as follows:

> I have read this plea agreement and have discussed it with my attorney, Danielle Jahn, Esquire. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in paragraph one.

> I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except

those set forth in this plea agreement. I am satisfied with the legal services provided
by my attorney in connection with this plea agreement and matters related to it.
*See* Plea Agreement at 6. On November 20, 2006, Casseday signed and dated the plea agreement

immediately below these paragraphs. Casseday's counsel, Ms. Jahn, also signed and dated the

agreement acknowledging that she had discussed its provisions fully with Casseday and that she

concurred in her client's desire to plead guilty. *Id.*

> 2.   Statement of Facts

On the same day as the initial plea colloquy, November 20, 2006, Casseday signed a

Statement of Facts that describes in detail the factual basis supporting the plea agreement. *See*

Statement of Facts ("SOF"), Docket No. [16]. The Statement of Facts provides that the parties

stipulate and agree that the facts contained therein are true and that they are being submitted to

demonstrate that there is probable cause that Casseday committed the offenses to which he is

pleading guilty. The Statement of Facts includes the following factual statements:

- On September 26, 2006, Casseday used a laptop computer in the District of Columbia to enter a Yahoo Internet chat room and contacted an individual using the screen name "daddysgrl.dc," with whom he chatted for approximately two hours. SOF ¶ 1. Casseday told "daddysgrl.dc" that he was on New York Avenue, N.E., that he had a wife and children in another state, that he rented a room in "Bowie" during the week, and that he was 53 years old. *Id.* He also forwarded a picture of his face. *Id.*

- In reality, "daddysgrl.dc" was an undercover MPD detective who told Casseday in the chat room that he was a 13-year-old girl named Amanda living in the District of Columbia with her mother. *Id.* ¶ 2. "Amanda" told Casseday that her father had engaged in some unspecified inappropriate sexual behavior with her and that she had not had sexual intercourse. *Id.* The MPD detective sent Casseday a photograph of a young girl in a swimming pool and represented that it was "Amanda." *Id.*

- During the chat, Casseday asked whether he could watch "Amanda" urinate and forwarded her several photographs of an erect penis, asking "Amanda" whether "it would fit inside" her. *Id.* ¶ 3. Casseday arranged to meet "Amanda" for the purpose of engaging in sexual intercourse. *Id.* ¶ 4. The undercover detective instructed Casseday to come to 1317 Adams Street, N.E., at about 9:30 p.m. *Id.*

- At approximately 9:40 p.m., an MPD detective observed Casseday operating a vehicle with New York license plates in the vicinity of the given address. *Id.* ¶ 5. Subsequent investigation revealed that Casseday was 53 years old, that he worked at the Washington Times building on New York Avenue, N.E., that he had entered that location prior to the internet chat with "daddysgrl.dc," that he was a resident of New York and that he rented a room in Bowie, Maryland. *Id.* ¶ 6.

- After Casseday's arrest, security personnel at the Washington Times building were notified, and Casseday's office was locked and secured in the early hours of September 27, 2006. *Id.* ¶ 7. On September 27, 2006, a United States District Court Magistrate Judge issued a search warrant authorizing the search of Casseday's office, and specifically of data storage devices in that location. *Id.* The warrant was executed by MPD detectives and a U.S. Secret Service agent later on the same date. *Id.* Among the items recovered during the search was a computer, which forensic analysts later determined contained the text of the internet chat between Casseday and "Amanda," the photograph of "Amanda" forwarded by the undercover MPD detective during the chat, and photography of two females who appeared to be in their teens, one of whom was urinating on the other. *Id.* ¶ 8. Also recovered were several "memory sticks" containing digital photographs that had been sent to "daddysgrl.dc," including pictures of penises and Casseday's face *Id* ¶

- After the search was completed, Washington Times security staff resecured the office. *Id.* ¶ 10. On September 28, 2006, Washington Times staff entered the office for the purpose of removing Casseday's personal possessions, and a staff member found a compact disc ("CD") on Casseday's desk. *Id.* The CD was turned over to a detective for analysis. *Id.* The CD was found to contain at least ten images of child pornography, as defined in 18 U.S.C. § 2256. *Id.* ¶ 11. "All of those images had traveled in interstate commerce by means of the Internet prior to coming into defendant's possession." *Id.* Two of the images were of children who had previously been identified by the National Center for Missing and Exploited Children. *Id*

The Statement of Facts is signed by Casseday, Ms. Jahn, and Assistant United States Attorney Patricia Stewart.

### 3. Arraignment and Plea Colloquy

A plea hearing was held before this Court on November 20, 2006. At the outset of the hearing, Casseday was presented with a copy of the Information and waived a formal reading of it. *See* 11/20/06 Tr. at 3. Casseday entered a plea of not guilty to Count One of the Information

and a plea of guilty to Counts Two and Three of the Information. Casseday was then placed under oath and began a colloquy with the Court regarding the plea agreement. *See id.* The Court informed Casseday that he could "consult with [his] lawyer at any time" if he needed to ask her any questions and explained to him that "you can't just sort of change your mind in a week and say, *Well, you know, I've changed my mind, Judge.*" *Id* at 4. Casseday indicated that he understood. *Id* The Court reviewed the charges in the Information and the pleas that Casseday agreed to enter. *Id.* at 5-6. The Court explained that the plea agreement was made pursuant to Rule 11(c)(1)(C) in which the parties agreed to what the sentence would be, subject to approval by the Court. *Id.* at 6. Casseday indicated that he understood the nature of Rule 11(c)(1)(C) plea agreement. *Id.* at 7.

The Court asked Casseday if he had reviewed the plea agreement, and Casseday indicated that he had gone over it with his attorney face to face and read it carefully. *Id.* at 8-9. He further indicated that he was completely satisfied with the services of his lawyer. *Id.* at 9. The Court asked whether Casseday had enough time to discuss the plea agreement with his lawyer. *Id.* Casseday indicated that there had been problems getting in contact with Ms. Jahn, and the Court asked Casseday to speak up if he needed additional time to make a decision. *Id.* at 10-11. Casseday explained that he had "raised issues with [Ms. Jahn] about he plea agreement, and from what I understand it is what it is." *Id.* at 11. He said he asked Ms. Jahn to negotiate a better deal with the Government, but he said "if there's no room for negotiation, then I believe I have to accept what they've offered me." *Id.* at 12. The Assistant U.S. Attorney at the hearing, Ms. Stewart, indicated that the Government was not willing to negotiate further and that she had communicated that to Ms. Jahn. *Id.* Casseday stated that he understood what he was agreeing to and that he had had enough time to make a decision about whether to accept the plea offer. *Id.* at

11, 14.

The Court confirmed that Casseday was aware of his constitutional rights and that he waiving certain of those rights by entering a plea agreement. *See* 11/20/06 Tr. at 14-17. The Court also discussed the nature of the plea agreement under Rule 11(c)(1)(C) and the specific provision in the plea agreement that allows *either* Casseday or the Government to withdraw the plea if it is not accepted by the Court. *See id.* at 19-28. Casseday indicated that he understood. *Id.* at 28.

The prosecutor, Ms. Stewart, then offered a factual proffer based on the information in the written Statement of Facts. *See* 11/20/06 Tr. at 28-32. During the proffer, Ms. Stewart stated that the CD recovered from Casseday's desk contained at least ten images of child pornography, "and all of them at some point had been transmitted in interstate commerce." *Id.* at 32.

The Court then reviewed the elements of Count Two:

> In terms of the elements of the offense, which is the possessing material constituting or containing child pornography, the defendant knowingly possessed—videotapes in this case—involved the use of a minor engaging in sexual[ly] explicit conduct. *The visual depiction was of such sexual[ly]-explicit conduct, had been mailed, shipped, or transported in interstate* Minor [means] the child [is] under the age of 18.

11/20/06 Tr. at 32 (emphasis added). Ms. Stewart interrupted the Court's recitation of elements to note that the case involved a CD, not videotapes. *Id.* at 32-33. The Court then completed the recitation of elements for Count Two, reading in part the definition of sexually explicit conduct. *Id.* at 33. The Court then proceeded to recite the elements of Count Three, the enticement charge. *Id.* at 33-34.

The Court asked Casseday whether he had signed the Statement of Facts, and he indicated that he had. *Id.* at 34. The Court then asked him several times whether there was anything in the Statement of Facts with which he disagreed. *Id.* at 34-35. Casseday replied that "As it's stated in

here, yes, I agree with it, Your Honor." *Id.* at 35. The Court then confirmed with Casseday that

he had in fact engaged in the conduct that makes up the elements of the offenses to which he was

pleading guilty. *See id.* at 37-40. For example, Casseday confirmed that he indicated in his

online chat that he intended to have sex with "Amanda" and set up a meeting for that purpose.

*Id.* at 38-39. Casseday also confirmed that he had a CD in his office that had images of child

pornography as described in the Statement of Facts. *Id.* at 40. Ms. Stewart then explained that

based on government investigation, one of the children in the photos on the CD had been abused

in North Carolina and another of the children had been abused in Ohio. *Id.* at 40-41. The Court

then summarized the evidence in support of Count Two as follows:

> In terms of possessing material constituting or containing child pornography, the
> defendant knowingly possessed a CD which depicted visually the use of a minor
> engaging in sexually-explicit conduct. The visual depiction was of sexual-explicit
> conduct which had been shipped in interstate commerce. The minor was under the
> age of 18. And it can be either lascivious simulated conduct involving the genitalia.
> So it would appear to fit all of the elements of the offense.

*Id.* at 41-42. The Court then asked Casseday whether there was "[a]nything else I need to know

from a factual perspective?" *Id.* at 42. Casseday responded that there was not, and Ms. Jahn

agreed. *Id.*

The Court then reviewed the terms of the written plea agreement. *Id.* at 42-53. The

Court discussed how the advisory sentencing guidelines would be calculated with respect to

Counts Two and Three. *Id.* at 53-58. The Court confirmed with Casseday that no other promises

had been made to him about the plea or sentence other than those stated in the plea agreement.

*See id.* at 59-60. The Court asked Casseday if he was entering the plea voluntarily and of his

own free will, and Casseday responded affirmatively. *Id.* at 60. The Court asked Casseday if he

was pleading guilty because he was in fact guilty of the charges, and he responded affirmatively.

*Id.* The Court asked Casseday if there was anything he did not understand about his plea, and he responded that there was nothing he did not understand. *Id.* The Court then asked Casseday how he pleaded to Counts Two and Three, and he responded that he was pleading guilty. *Id.* at 60-61. The Court then concluded the plea colloquy and scheduled a date for the sentencing.

### 4.    Amended Plea Agreement

Following the plea colloquy, the parties realized that the sentence agreed upon in the plea agreement—30 months for Count Two and 60 months for Count Three—was inappropriate because the D.C. Code prohibited a sentence of 60 months for the enticement charge in Count Three. Therefore, the parties agreed to "flip" the sentence so that Casseday would serve 60 months for Count Two and 30 months for Count Three, to run consecutively, which would total the same 90 months agreed to in the earlier plea agreement. On December 21, 2006, this Court held a hearing with Casseday present to discuss this modification to the plea agreement. *See* 12/21/06 Tr. at 65-66. The Court explained that a 60-month sentence for Count Two would constitute a variance from the advisory sentencing guidelines range of 30 to 37 months but would be less than the statutory maximum of ten years. *Id.* at 66. The Court held the hearing in order to put on the record the reasons why the Government was offering this plea arrangement and why a variance from the advisory guidelines would be advantageous to Casseday. *See id.* at 66-67.

Ms. Stewart explained that Casseday was initially charged by Information with a violation of 18 U.S.C. § 2422(b), enticement of a minor, which carried a mandatory minimum sentence of ten years. *See id.* at 67-68. She further explained that if Casseday went to trial and was convicted on this charge as well as the child pornography charge in Count Two, he would face a ten-year mandatory minimum sentence for Count One plus a guidelines range of approximately four to five years for Count Two. *Id.* Therefore, the plea of 90 months would be

10

substantially less than the fourteen or fifteen years Casseday might have faced if he had gone to trial if the sentences ran consecutively. Ms. Stewart also set out the reasons the government had decided to make this plea offer. *See id.* at 67-69. The Court explained in detail to Casseday that "the advantage to you is to get dismissed the federal enticement charge, because that one, even though the sentencing guidelines— —whether or not you accepted responsibility— would be less than— -quite a bit less than the 10 years which you're now facing." *Id.* at 75. Casseday indicated that he understood that this would be a variance from the sentencing guidelines and that he understood the advantage of avoiding a ten-year mandatory minimum sentence and that this was the reason he was accepting the plea. *Id.* at 76. Casseday also reaffirmed that he understood his constitutional rights and was waiving them and that he was entering the plea voluntarily. *Id.* at 76-77. Casseday agreed to adopt his responses from the plea hearing held a month earlier on November 20, 2006. *Id.*

The Court then reviewed in detail the amendment to the plea agreement, which was memorialized in a letter dated December 19, 2006, and signed by counsel for both parties and by Casseday. *See* Plea Agreement Letter (Dec. 19, 2006), Docket No. [21]. Casseday indicated that he understood the amendment to the plea agreement. *See* 12/21/06 Tr. at 76-84. With respect to the "flipped" sentence, the Court explained in part that "although it's in a variance from the advisory sentencing guidelines in both federal and DC, and the sentence is higher than the guidelines, the advantage to you still is to get rid of the— —and have dismissed the charge that you would be facing with the mandatory minimum." *Id* at 84-85. Casseday indicated that he understood. *Id.* at 85.

### 5.   Sentencing

The Court held the sentencing hearing on February 15, 2007. The Court accepted the

plea agreement under Rule 11(c)(1)(C), indicating that there were "justifiable reasons" for the sentence which the government had set out and the Court would adopt. *See* 2/15/07 Tr. at 5. **The** Court also adopted the presentence report ("PSR") as written. *Id.* at 6. The PSR stated in part that the CD found at Casseday's desk contained at least ten images of child pornography which had traveled in interstate commerce by means of the internet prior to coming into Casseday's possession. *See* PSR ¶ 16. Defendant did not object to this statement in the PSR. *See* Receipt & Acknowledgment of Presentence Investigation Report, Docket No. [24].

The Court identified the factors it was considering in determining an appropriate and reasonable sentence pursuant to 18 U.S.C. § 3553(a). The Court noted the factors set forth by the Government in favor of the plea agreement, Casseday's personal background, the facts of the case, the harms to the victims, and Casseday's early acceptance of responsibility. *See* 2/15/07 Tr. at 27-34. The Court sentenced Casseday to serve a term of 60 months imprisonment on Count Two and a consecutive term of 30 months imprisonment on Count Three, as agreed to in the plea agreement. *Id* at 37. The Court sentenced Casseday to concurrent supervised release terms of 240 months and 36 months. *Id.* The Court advised Casseday that

> You have a right to appeal the sentence imposed by the court. If you choose to appeal, you must do so within 10 days after the court has entered judgment in this case. If you're unable to afford the costs of an appeal, you may request permission from the court to file an appeal without cost to you. If you're going to appeal, you should talk to your counsel about it. They file a notice. You don't need briefs, etc., immediately. That occurs at a later point.

*Id* at 41. The judgment was docketed on February 20, 2007.

Casseday did not file an appeal challenging his conviction or sentence. According to his affidavit in support of his § 2255 motion, Casseday spoke with Ms. Jahn by telephone approximately 3-4 days after sentencing and requested that she file a Notice of Appeal

12

challenging the conviction or sentence. *See* Pet'r's Aff. ¶ 14. Casseday also claims that he sent a letter dated February 28, 2007 to Ms. Jahn requesting that she file a notice of appeal. *Id.* ¶ 16; Pet'r's Reply at 8. However, Casseday has not produced a copy of this letter. According to Casseday, Ms. Jahn never consulted with him regarding the benefits or consequences of seeking relief through an appeal. *See* Pet'r's Aff. ¶ 18. According to a declaration submitted by Ms. Jahn, she consulted with Casseday after the sentencing and informed him that because he had agreed to the sentence in the plea agreement, there was no basis for an appeal. *See* Gov't Opp'n, Ex. G. (Decl. of Danielle C. Jahn) ¶ 3. Ms. Jahn states that Casseday did not ask her to file an appeal or suggest that an appeal be filed either during that conversation or in the various letters that Casseday has sent her since the sentencing. *Id.* ¶¶ 3-7. Ms. Jahn does not have a copy of any letter from Casseday dated February 28, 2007, in her file. *See id.* ¶ 4, 9.

     *B.    Petitioner's § 2255 Motion*

     On February 19, 2008, Casseday filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). In his § 2255 Motion and memorandum in support thereof, Casseday asserts three claims: (1) that the Court violated Rule 11 when it failed to inform him of the elements of the crime charged and determine that he understood the nature of the charge (specifically, that one of the elements of Count Two was that the images of child pornography had traveled in interstate commerce); (2) that the Court violated Rule 11 by failing to ascertain that a factual basis existed for his plea; and (3) that he received ineffective assistance of counsel when Ms. Jahn failed to file a timely notice of appeal. Casseday also alleges that his counsel was constitutionally ineffective for failing to object to the Court's errors.

     On May 1, 2008, Casseday filed an Amended 28 U.S.C. § 2255 Motion to Vacate, Set

Aside, or Correct Sentence by a Prisoner in Federal Custody Pursuant to Rule 15 fo Federal Civil Judicial Procedure ("Amended § 2255 Motion"). Casseday's Amended § 2255 Motion presented two additional claims: (1) that the Court violated Rule 11 when it failed to inform him of the reasons for the sentencing package as required by 18 U.S.C. § 3553(c); and (2) his conviction is based on evidence (the CD) that was seized in violation of the Fourth Amendment.

On September 9, 2008, the Government filed a Consolidated Opposition to Casseday's § 2255 Motion and Amended § 2255 Motion. The Government contends that Casseday's Fourth Amendment claim must be dismissed as untimely and that his remaining claims must be dismissed on the merits. Casseday subsequently filed a Response brief on December 3, 2008, addressing many of the issues raised by the Government's Consolidated Opposition. On April 2, 2009, Casseday filed a document captioned "Rule 201 Judicial Notice" which included a copy of a letter from the Government to Ms. Jahn dated October 2, 2006. On July 30, 2009, Casseday filed a document entitled "Rule 7 Expanding the Record," which was followed by an "Affidavit in Support of Rule 7" filed on August 26, 2009.[3] *See* Docket Nos. [60], [61]. These "Rule 7" filings contain additional allegations and arguments relating to the claims presented in Casseday's § 2255 Motion and Amended § 2255 Motion. In addition, Casseday appears to assert additional claims in these "Rule 7" filings relating to his arrest, alleging entrapment and a lack of probable cause for his arrest. *See* Docket No. [60] at 6-11. Casseday also appears to claim that his counsel coerced him into affirmatively answering one of the Court's questions during the plea colloquy relating to Casseday's intent to entice a minor. *See* Aff. in Supp. of Rule 7 ¶¶ 4, 8, 23.

---

[3] Rule 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that the Court may direct the parties to expand the record by submitting additional materials relating to the § 2255 motion. *See* Rules Governing § 2255 Proceedings, Rule 7(a)

Casseday claims that his counsel "insisted" that he answer the question in the affirmative and stomped her foot while doing so, despite Casseday's having told her that he had no intent to commit any crime. *See id.* ¶¶ 6-9. The Government has not filed a response to Casseday's "Rule 7" pleadings.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that his sentence was imposed "in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . ." 28 U.S.C. § 2255. The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. *See United States v. Frady*, 456 U.S. 152, 164 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum."). Two such limitations are particularly relevant to the present motion.

First, a prisoner cannot raise a claim on collateral appeal that was raised and adjudicated on direct appeal, unless there has been an intervening change in law. *United States v. Greene*, 834 F.2d 1067, 1070 (D.C. Cir 1987). *Id* (citing *Garris v. Lindsay*, 794 F.2d 722, 726-27 (D.C. Cir. 1986)). Second, a prisoner may not raise a claim on collateral appeal that he *could* have contested on direct appeal unless he can first demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However,

"[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000) (citing *United States v. Johnson*, 1999 WL 414237 at 1 (D.C. Cir., May 28 1999)), *aff'd*, 22 Fed. Appx. 3 (D.C. Cir. 2001).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166. Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. However, a district court need not conduct an evidentiary hearing before denying a § 2255 motion when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.*; *United States v. Morrison*, 98 F 3d 619, 625 (D.C. Cir. 1996). "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal . . . ." Rules Governing § 2255 Proceedings, Rule 4(b). "[A] district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion when the judge denying the § 2255 motion also presided over the trial in which the petitioner claims to have been prejudiced." *Morrison*, 98 F.3d at 625.

### III. DISCUSSION

In his § 2255 Motion and Amended § 2255 Motion and related pleadings, Casseday asserts seven claims of error: (1) that his guilty plea was involuntary because the Court and his counsel failed to explain to him that travel in interstate commerce was an element of the child

pornography charge; (2) that the Court failed to ascertain a sufficient factual basis for his guilty plea because the record did not show that the images of child pornography had traveled in interstate commerce; (3) that his counsel disregarded his instructions to file a notice of appeal; (4) that the Court failed to inform him of the reasons for the sentencing package; (5) that his conviction is based on evidence seized in violation of the Fourth Amendment; (6) that his arrest was unconstitutional; and (7) that his counsel coerced him into answering a question affirmatively during the plea colloquy. The Government argues that Casseday's Fourth Amendment claim must be dismissed as untimely because it was asserted outside the one-year statute of limitations and does relate back to his original § 2255 Motion. The Government contends that Casseday's other claims are contradicted by the factual record and should therefore be dismissed. The Court shall address each of Casseday's claims, beginning with those that may be untimely.

### A      *Timeliness of Petitioner's Fourth Amendment and Arrest Claims*

The Government contends that the Fourth Amendment claim asserted in Petitioner's amended § 2255 motion is time-barred because the amended motion was filed after the one-year statute of limitations for § 2255 motions and the claim does not relate back to Petitioner's original § 2255 motion. Section 2255 provides:

> A 1-year statute of limitations shall apply to a motion under this section  The limitation period shall run from the latest of--
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). "In most cases, the operative date from which the limitation period is measured will be . . . the date on which the judgment of conviction becomes final." *Dodd v. United States*, 545 U.S. 353, 357 (2005). Because Casseday did not appeal his case, his judgment of conviction became final no later than March 6, 2007, the deadline for Casseday to appeal his conviction. *See Clay v. United States*, 537 U.S. 522, 532 (2003) (holding that § 2255's one-year limitation period starts to run when the time for seeking appellate review expires).

Although Casseday's § 2255 Motion was filed within this one-year limitation period, Casseday's Amended § 2255 Motion was not filed within that period. Therefore, any claims presented in the Amended § 2255 Motion are time-barred unless they "relate back" to the claims asserted in the original motion. *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002). Under the relation back doctrine as expressed in Federal Rule of Civil Procedure 15(c), an amended claim relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P 15(c)(1)(B). "[W]hile an amendment offered for the purpose of adding to or amplifying the facts already alleged in support of a particular claim may relate back, one that attempts to introduce a new legal theory based on facts different from those underlying the timely claims may not relate back. *Hicks*, 283 F.3d at 388-89 (internal citations omitted). The new claims must not arise from facts that are separate "in both time and type" from the facts underlying the original pleading. *Id*; *see Mayle v. Felix*, 545 U.S.

18

644, 662 (2005) ("An amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.")[4]

Casseday raises two claims in his amended § 2255 motion: (1) that the Court violated Rule 11(b)(1)(M) and 18 U.S.C. § 3553(c) by failing to inform him of the reasons for the sentencing package; and (2) his conviction is based on evidence seized in violation of the Fourth Amendment. The Government concedes that the first of these claims[5] relates back to Casseday's original § 2255 Motion and is therefore timely. See Gov't Mem. at 20. However, the Government argues that the Fourth Amendment claim does not relate back because it is different in time and type from the claims asserted in the original § 2255 Motion. The Court agrees. The claims in Casseday's initial motion all relate to errors during the plea hearings or after the sentencing process; the Fourth Amendment claim asserted in the amended motion focuses on an alleged constitutional violation in the seizure of evidence following his arrest. Specifically, Casseday contends that the removal of the CD from his desk by a Washington Times staff member after the search warrant had been executed was a "second search" conducted without a warrant in violation of the Fourth Amendment. See Amended § 2255 Motion at 7-11. There is

_____

[4] Although *Felix* involved the statute of limitations governing federal habeas corpus petitions filed by state prisoners under 28 U.S.C. § 2254, the federal courts have construed these statutes of limitations harmoniously. See *Clay*, 537 U.S. at 529-32 (construing § 2255's limitations period in the same manner as the limitations period applicable to § 2254 petitions despite "verbal differences" between the statutes); *United States v. Cicero*, 214 F.3d 199, 203 n.* (D.C. Cir. 2000) ("Courts have generally applied the same analysis to the time limitations in § 2254 and § 2255.").

[5] The Government reads the Rule 11 claim in Casseday's Amended § 2255 Motion as two distinct claims, the first being error by the Court and the second being ineffective assistance of counsel for failure to object to the Court's error. See Gov't Opp'n at 20. The Court shall address this issue below

nothing in the original § 2255 Motion pertaining to the search of Casseday's office or in any way calling into question the admissibility of the CD containing images of child pornography. Therefore, the Court finds that Casseday's Fourth Amendment claim in his Amended § 2255 Motion does not relate back to his original § 2255 Motion.

In his reply brief, Casseday suggests that he did not become aware of the removal of evidence by the Washington Times staff member until after he filed his § 2255 Motion in February 2008. *See* Pet'r's Reply at 3. Thus, Casseday argues that his Fourth Amendment claim is timely because it was brought within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *See* 2255(f)(4). However, Casseday's assertion that evidence about the seizure of the CD is newly discovered is clearly contradicted by the record. The Statement of Facts signed by Casseday on November 20, 2006, explicitly states that a Washington Times staff member found a compact disc in Casseday's desk after the search of Casseday's office was completed and turned it over to the U.S. Secret Service for analysis. Thus, Casseday had notice by November 2006 that the CD had been seized by a staff member following the official search. Additional information relevant to Casseday's Fourth Amendment claim, such as the identity of the staff member or her alleged status as a "Special Police Officer," could have been discovered through the exercise of due diligence long before May 1, 2007, which was one year before the filing of the Amended § 2255 Motion. Therefore, Casseday's Fourth Amendment claim does not relate back to the filing of his original § 2255 Motion and is therefore untimely under § 2255(f) and must be dismissed.

Most of the additional claims that Casseday is attempting to assert through his "Rule 7" pleadings are similarly time-barred. On July 30, 2009, Casseday filed a document entitled "Rule

7 Expanding the Record" in which he argues that he was arrested without probable cause, that he was not immediately read his rights after arrest, and that he was entrapped by police. On August 26, 2009, Casseday filed an "Affidavit in Support of Rule 7" in which he alleges additional facts in support of his claims and appears to state a new claim that he felt compelled under duress by his counsel to make an involuntary statement during the plea colloquy. Because the Court must construe *pro se* pleadings liberally, the Court must consider whether Casseday intended his "Rule 7" pleadings to be further amendments to his § 2255 Motion. With the exception of the duress claim, each of the new claims asserted in Casseday's supplemental pleadings relates to the facts surrounding Casseday's arrest, and there is no allegation that Casseday was unaware of or could not have discovered the facts from which these claims arise until after his conviction. Because Casseday's original § 2255 Motion does not contain any claims relating to Casseday's arrest, these new claims stated in the "Rule 7" pleadings are clearly barred by the one-year statute of limitations and must be dismissed. Casseday's duress claim, however, relates to the voluntariness of his plea, an issue that is central to his original § 2255 Motion. Therefore, the Court shall address the merits of Casseday's duress claim in the context of ruling on his § 2255 Motion.

  *B.  Petitioner's Claim that Counsel Ignored His Instructions to Notice an Appeal*

  Casseday contends that his counsel was constitutionally ineffective for failing to file a notice of appeal despite his explicit instructions to do so. The Supreme Court has held that criminal defendants have a right to "reasonably effective" legal assistance, and a defendant claiming ineffective assistance of counsel must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The *Strickland*

standard has been extended to claims that a defense counsel rendered ineffective assistance by failing to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). However, the Supreme Court has explained that when counsel has consulted with the defendant about the advantages and disadvantages of filing an appeal and made a reasonable effort to discover the defendant's wishes, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478. Where defense counsel has not consulted with the defendant about filing an appeal, the court must determine whether counsel's failure to consult constitutes deficient performance. *Id.* "[C]ounsel has a constitutionally imposed duty to consult" only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480; *see also United States v. Taylor*, 339 F.3d 973, 978 (D.C. Cir. 2003).

Casseday has alleged in his § 2255 Motion that "he adamantly instructed his former counsel, Ms. Jahn, to file a timely notice of appeal on his behalf, soon after the conclusion of his sentencing proceedings ended[sic]." *See* § 2255 Mot. at 15. Casseday declares in his affidavit in support of his § 2255 Motion that he spoke to Ms. Jahn by telephone approximately 3-4 days after sentencing and requested that she file a notice of appeal challenging the conviction or sentence. *See* Pet'r's Aff. Supp. § 2255 Mot. ¶ 14. Casseday further declares that he sent a letter to Ms. Jahn specifically requesting that she file a notice of appeal and that at no time did she consult with him regarding the benefits or consequences of filing an appeal. *See id.* ¶¶ 16, 18.

Casseday's factual assertions are contradicted by the declaration of Ms. Jahn. *See* Gov't Opp'n, Ex. G (Decl. of Danielle C. Jahn). Ms. Jahn declares that she met with Casseday after the

sentencing hearing and explained that since he received the sentence to which he agreed, there was no basis for an appeal. *Id* ¶ 3. Ms. Jahn avers that she is certain that Casseday never asked her to file or suggested that she file a notice of appeal. *Id.* Ms. Jahn further declares that she received several letters from Casseday in which he expressed his unhappiness with his case and that in those letters Casseday never asked her to file a notice of appeal in this matter. *See id.* ¶¶ 4-10.

Because there is a factual dispute in the record regarding Ms. Jahn's conduct and Casseday's instructions to her, the Court shall hold an evidentiary hearing to determine whether Ms. Jahn's performance as defense counsel was constitutionally inadequate with respect to the notice of appeal. The Court shall appoint counsel to represent Casseday for purposes of the evidentiary hearing.

C. *Petitioner's Rule 11 Claims*

Casseday claims that this Court violated Federal Rule of Criminal Procedure 11 by (1) failing to inform Casseday of the elements of the crimes charged and determine that Casseday understood the nature of the charges; (2) failing to ascertain that a factual basis existed for Casseday's plea; and (3) failing to inform Casseday of the reasons for the sentence package. Because Casseday did not raise these issues in a timely appeal, these claims are procedurally defaulted and may not be raised unless Casseday can show both cause for the procedural default and actual prejudice resulting from the errors. *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003). Ineffective assistance of counsel may provide cause for a procedural default, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986), and Casseday argues that his counsel was

ineffective in failing to object to these alleged defects in his plea proceedings.[6] Because the Court shall hold an evidentiary hearing to determine whether Casseday's failure to note an appeal was caused by ineffective assistance of counsel, the Court shall hold in abeyance a determination as to whether Casseday has established cause to assert his defaulted Rule 11 claims. However, because Casseday must also demonstrate actual prejudice from the alleged errors, the Court may review the merits of his claims to determine whether he would be entitled to any relief even if cause is established.

"To have a plea set aside on a section 2255 petition, the petitioner must show that the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C. Cir. 2001) (quotation marks and citations omitted). The Government contends that Casseday's claims are each contradicted by the record. The Court shall review each in turn.

      1.     The Voluntariness of the Plea

Casseday's first claim is that his plea of guilty to Count Two was not voluntary because the Court failed to explain, and he failed to understand, that one element of the child pornography charge is that the images have traveled in interstate commerce. "For a plea to be voluntary under the Constitution, a defendant must receive 'real notice of the true nature of the charge against him.'" *United States v. Ahn*, 231 F.3d 26, 33 (D.C. Cir. 2000) (quoting *United*

_____

[6] The Government interprets Casseday's motions as asserting separate stand-alone claims of ineffective assistance of counsel relating to these alleged Rule 11 violations. However, Casseday's argument is that his counsel was ineffective for failing to object to these errors and/or appeal, thus causing the procedural defaults. Even if Casseday's pleadings could be construed to assert stand-alone ineffective assistance claims, those claims would fail for the same reasons as Casseday's Rule 11 claims.

*States v. Dewalt*, 92 F.3d 1209, 1211 (D.C. Cir. 1996)). In determining whether a defendant had an understanding of the law in relation to the facts of his case, "the record of the plea colloquy must, based on the totality of the circumstances, lead a reasonable person to believe that the defendant understood the nature of the charge." *Id.* (quotation marks and citation omitted).

The record in this case shows that Casseday should have been aware that travel in interstate commerce was an element of the child pornography charge to which he pled guilty. The Court recited the elements of Count Two twice during the plea colloquy, each time explaining that the visual depiction of sexually explicit conduct had been shipped in interstate commerce. *See* 11/20/06 Tr. at 32, 41-42. The Statement of Facts, which was signed by Casseday and his counsel, explicitly states that the images on the CD recovered from Casseday's office had traveled in interstate commerce by means of the Internet prior to coming into Casseday's possession. *See* SOF ¶ 11. Casseday stated during the plea colloquy that he agreed with the facts as stated in the Statement of Facts and that he had reviewed the plea agreement by himself and with his counsel. The proffer made by the Government during the plea hearing also included a statement that the images had traveled in interstate commerce and an explanation as to how this fact had been learned. *See* 11/20/06 Tr. at 32, 40-41. Casseday twice affirmed that he was voluntarily entering a plea of guilty and that he was doing so because he was guilty of the charges as described in the written Statement of Facts and orally stated in open court, thereby indicating that he was entering the plea knowingly as well.

The factors to be considered in determining whether a plea is knowing and voluntary include the defendant's level of intelligence, whether he was represented by counsel, the complexity of the charge against him, and his own statements at the plea hearing. *In re Sealed Case*, 283 F.3d 349, 352 (D.C. Cir. 2002). The D.C. Circuit has held that a defendant knowingly

entered a guilty plea when the court informed the defendant of the charge three times during the plea colloquy, the factual proffer was detailed, the charge against the defendant was straightforward, the defendant was represented by counsel, and the defendant demonstrated knowledge of the term "conspired." *See In re Sealed Case*, 283 F.3d at 355. Here, Casseday was twice informed of the charge against him by the Court during the plea colloquy; the factual proffer and the Statement of Facts signed by Casseday explicitly mentioned the interstate commerce element; the child pornography charge is straightforward; and Casseday was represented by counsel. Casseday has a college education and training as a paralegal and was employed as a human resources director for the Washington Times when he was arrested. *See* PSR ¶¶ 54-58. Given these facts and Casseday's level of education, there is no doubt that he understood that he was agreeing that the images on the CD had traveled in interstate commerce. Even if the Court failed to specifically explain that travel in interstate commerce was an element of the child pornography charge, the D.C. Circuit has made clear that Rule 11 "does not *require* that the district court spell out the elements of the charge in order to inform the defendant adequately." *In re Sealed Case*, 283 F.3d at 354. "While the district court must assure itself that the defendant understands the nature of the charge to which he is pleading so that his plea is a knowing one, it need not, in every case, specially isolate each element of the particular crime." *Id.* The circumstances of the plea demonstrate that Casseday received "real notice" of the charge against him. Therefore, the Court did not violate Rule 11 by failing to ensure that Casseday understood the charge against him. Because Casseday cannot show actual prejudice resulting from this alleged error, the Court shall dismiss his first Rule 11 claim.

### 2. Factual Basis for the Plea

Casseday's second claim is that the Court failed to determine that there was a factual

basis for the plea of guilty as to Count Two because there was no evidence proffered that the images had traveled in interstate commerce. "To establish a satisfactory factual basis, the Government must proffer 'evidence from which a reasonable juror could conclude that the defendant was guilty as charged.'" *Ahn*, 231 F.3d at 31 (quoting *In re Sealed Case*, 153 F.3d 759, 771 (D.C. Cir. 1998)). Contrary to Casseday's assertions in his § 2255 Motion, the record from the plea colloquy clearly shows that there was evidence that the images on the CD recovered from Casseday's office had traveled in interstate commerce. Casseday's admissions in the Statement of Facts, together with the Government's proffer that several of the images found on the CD had been confirmed as depictions of children from out of state, constitute sufficient evidence that Casseday entered the plea knowingly as to this issue and for a reasonable juror to find that Casseday was guilty of possession of child pornography. Therefore, the Court did not violate Rule 11 in failing to determine that there is a factual basis for the plea. Because Casseday cannot show actual prejudice from this alleged error, the Court shall dismiss his second Rule 11 claim.

### 3 The Reasons for the Sentence

Casseday's third claim is that the Court violated rule 11(b)(1)(M) and 18 U.S.C. § 3553(c) by failing to inform him of the reasons for his sentence. At the time of sentencing, Rule 11(b)(1) provided:

> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following: . .
>
> (M) the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart from those guidelines under some circumstances . . . .

FED. R. CRIM. P. 11(b)(1) (2007).[7] At the time of sentencing, 18 U.S.C. § 3553(c) provided as follows:

> (c) Statement of reasons for imposing a sentence. — The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence —
>
> . . .
>
> (2) is not of the kind, or is outside the range [prescribed by the Sentencing Guidelines], the specific reasons for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment . . . .

18 U.S.C. § 3553(c) (2007).[8] The Sentencing Guidelines also dictate that the court provide a statement of reasons for approving a Rule 11(c)(1)(C) plea agreement that includes a sentence that departs from the guidelines:

> In the case of a plea agreement that includes a specific sentence (Rule 11(c)(1)(C)), the court may accept the agreement if the court is satisfied either that:
>
> (1) the agreed sentence is within the applicable guideline range; or
>
> (2) (A) the agreed sentence departs from the applicable guideline range for justifiable reasons; and (B) those reasons are specifically set forth in writing in the statement of reasons or judgment and commitment order.

U.S. SENTENCING GUIDELINES MANUAL § 6B1.2 (2007). The D.C. Circuit has held that a district court's failure to provide a written statement of reasons as required by § 3553(c) is plain error, even if the court has otherwise stated in open court its reasons for the departure from the guidelines. *See In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *id.* at 198 n.3 (dissenting

---

[7] Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), Rule 11(b)(1)(M) was amended so as to require the court to explain "in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)." FED. R. CRIM. P. 11(b)(1)(M).

[8] This provision has since been amended so as to provide that the statement of reasons is separated from the written order of judgment. *See* 18 U.S.C. § 3553(c) (2010).

opinion) (noting that the district court had stated its reasons for the departure in open court).

The record in this case shows that the Court did in fact inform Casseday during the plea colloquy about how the sentencing guidelines would be calculated for Counts Two and Three and the Court's obligation to consider those sentences in determining whether to accept the plea agreement. After the plea agreement was amended to "flip" the sentences for Counts Two and Three, the Court discussed the changes in detail during the continued plea colloquy and explained why the negotiated sentence would be advantageous to Casseday notwithstanding the fact that the 60-month sentence for Count Two would be an upward departure from the federal guidelines range. *See* 12/21/06 Tr. at 73-76, 84-85. During the sentencing hearing, the Court found that there were justifiable reasons for the upward departure and adopted the reasons set out by the Government in approving the Rule 11(c)(1)(C) agreement. *See* 2/15/07 Tr. at 5-6. The Government's reasons were set forth in the plea colloquy and also spelled out in its sentencing memorandum. *See* Gov't's [22] Mem. in Aid of Sentencing ¶¶ 8-10. However, the record shows that a written statement of reasons for the sentence was not provided in the order of judgment, despite the requirements of § 6B1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(c).

Thus, it appears that there was a procedural error in the sentence because the Court failed to memorialize in writing its reasons for imposing a sentence that departs from the guidelines as required by 18 U.S.C. § 3553(c). Because this claim is procedurally defaulted, Casseday must establish both cause and actual prejudice for the default. Although the Court is holding in abeyance the issue of cause pending an evidentiary hearing, the Court could proceed to the question of whether Casseday has been actually prejudiced by the Court's apparent failure to provide written reasons for the sentence in light of the fact that the reasons were stated on the record in open court and Casseday received the sentence to which he agreed under Rule

29

11(c)(1)(C).[9] However, the Government failed to address § 3553(c) in its opposition brief.[10]
Therefore, the Court shall hold in abeyance Casseday's third Rule 11 claim and order the
Government to provide supplemental briefing on this question.

D.   *Casseday's Duress Claim*

Casseday claims in his "Affidavit in Support of Rule 7" filing that he was coerced by his
counsel into responding affirmatively to the Court's question during the plea colloquy regarding
his intent to entice a person purporting to be a child to engage in a sexual act. The relevant part
of the transcript from the plea colloquy reads as follows:

> [The Court:] And was it your intent, in having this discussion with her
> ["daddysgrl.dc"] and then later setting up a meeting, to have vaginal
> intercourse with the child?
>
> [Casseday:] May I talk to my attorney before I answer that, please?
>
> [The Court:] Yes.
>
> (Attorney/client conference.)
>
> [Casseday:] Would you please repeat the question?
>
> [The Court:] Sure. In this chat you had with ["daddysgrl.dc"] on[]line, did you
> indicate through this conversation that you intended to engage in
> some form of vaginal intercourse with ["daddysgrl.dc"]? In other
> words, in this conversation?
>
> [Casseday:] In the conversation, that's what happened, yes, Your Honor.

---

[9] At least one court has found that a procedural error in sentencing did not constitute
actual prejudice for a defendant who received the sentence which he had negotiated in a plea
agreement under Rule 11(c)(1)(C). *See Carter v. United States*, No. 2:06-CV-157, 2007 WL
2156706, at *5 (E.D. Tenn. 2007).

[10] The Government does argue in a footnote that the Court complied with § 6B1.2 of the
Sentencing Guidelines by adopting the United States's written statement of reasons at sentencing
and suggests that the Court simply amend the judgment and commitment order to include a
statement of reasons. *See* Gov't Opp'n at 28 n.4

11/20/06 Tr. at 38. Casseday claims in his affidavit that during the conference with his counsel in the middle of this line of questioning, he told Ms. Jahn that he could not answer this question affirmatively because there was no intent to commit any crime. *See* Aff. in Supp. of Rule 7 ¶ 6. Casseday claims that Ms. Jahn "insisted" that he answer affirmatively, stomping her foot at him, and that he felt compelled, under duress, to make an involuntary statement under oath. *Id.* ¶¶ 7-8.

Casseday later affirmed during the plea colloquy that he was entering the plea voluntarily and that he did not have any additional questions or comments for the Court, and he reaffirmed this during the continued plea colloquy one month later. Nevertheless, if the facts alleged in Casseday's affidavit are credited as true, he has raised a serious question about the voluntariness of his plea and the adequacy of his counsel's representation. Because the Government has not filed a response to the allegations in Casseday's "Affidavit in Support of Rule 7," the Court does not have a full record on which to adjudicate Casseday's duress claim. Therefore, the Court shall request that the Government file a written response to this claim and inquire about the facts surrounding Casseday's duress claim during the evidentiary hearing.

## IV. CONCLUSION

The Court finds that the Fourth Amendment claim asserted in Casseday's Amended § 2255 Motion and the claims relating to Casseday's arrest and searches that appear to be asserted in Casseday's supplemental "Rule 7" pleadings are untimely and must be dismissed. Because of conflicting testimony in the record, the Court shall hold an evidentiary hearing on Casseday's claim that his counsel was constitutionally ineffective for failing to file a notice of appeal. The Court shall also hear testimony regarding Casseday's claim that he was coerced by

31

his counsel to answer a question affirmatively during his plea colloquy and request that the Government file a written response to this duress claim. The Court finds that Casseday's claims that the Court violated Rule 11 by failing to ensure the plea was voluntary (apart from his duress claim) and ascertain a factual basis for the plea are clearly contradicted by the record and may be dismissed as meritless without an evidentiary hearing. The Court shall hold in abeyance Casseday's claim that the Court failed to provide a written statement of reasons for the sentence pending further briefing from the Government. An appropriate Order accompanies this Memorandum Opinion

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge