# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RANDALL CASSEDAY,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Criminal Action No. 06-329 (CKK)
Civil Action No. 08-322 (CKK)

## MEMORANDUM OPINION
(January 25, 2011)

Presently before the Court is Petitioner Randall Casseday's [28] Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. On July 13, 2010, the Court denied-in-part Casseday's motion, holding in abeyance three claims raised by Casseday pending additional briefing from the government and an evidentiary hearing.[1] Casseday's three remaining claims are: (1) that his counsel was constitutionally ineffective for disregarding his instructions to file a notice of appeal; (2) that his counsel coerced him into answering a question affirmatively during the plea colloquy; and (3) that the Court failed to inform him in writing of the reasons for his sentencing package as required by 18 U.S.C. § 3553(c). The government submitted a supplemental opposition brief addressing these claims on August 3, 2010, and Casseday filed a supplemental reply on August 20, 2010.[2] The Court held an evidentiary hearing January 7, 2011.

---

[1] The Court assumes familiarity with its prior opinion and shall not repeat at length the background of Casseday's claims. *See Casseday v. United States*, 723 F. Supp. 2d 137 (D.D.C. 2010).

[2] Casseday's reply includes arguments relating to some of the claims that were previously denied by the Court. The Court finds that there is nothing in Casseday's reply that warrants a reconsideration of the Court's earlier ruling.

During the evidentiary hearing, Casseday informed the Court that he had decided not to present any evidence during the hearing regarding his claims and would rest on his written papers. Because Casseday bears the burden of establishing his claims by a preponderance of the evidence, *United States v. Thompson*, 587 F. Supp. 2d 121, 122 (D.D.C. 2008), his failure to present any evidence at the hearing is fatal to his claims. However, the Court heard the testimony of Casseday's former defense counsel and makes alternative findings of fact based on the record at the hearing.

As explained below, the Court finds that Casseday's counsel informed him that there was no basis for an appeal and that Casseday did not instruct his counsel to file a notice of appeal. Accordingly, Casseday's counsel was not constitutionally ineffective, and her failure to file an appeal does not establish cause to allow Casseday to assert his procedurally defaulted claims. The Court also finds that Casseday's claim that he was coerced by his counsel during the plea colloquy is without merit. Additionally, the Court finds that Casseday has not shown actual prejudice from the Court's failure to provide a written statement of reasons in the judgment and commitment order and that such a technical violation of the statute is not remediable by § 2255. Therefore, the Court shall deny Casseday's § 2255 motion in its entirety.

## I. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that his sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C.

§ 2255. The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. *See United States v. Frady*, 456 U.S. 152, 164 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum."). Two such limitations are particularly relevant to the present motion.

First, a prisoner cannot raise a claim on collateral appeal that was raised and adjudicated on direct appeal, unless there has been an intervening change in law. *United States v. Greene*, 834 F.2d 1067, 1070 (D.C. Cir. 1987). *Id.* (citing *Garris v. Lindsay*, 794 F.2d 722, 726-27 (D.C. Cir. 1986)). Second, a prisoner may not raise a claim on collateral appeal that he *could* have contested on direct appeal unless he can first demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000) (citing *United States v. Johnson*, 1999 WL 414237 at 1 (D.C. Cir., May 28 1999)), *aff'd*, 22 Fed. Appx. 3 (D.C. Cir. 2001).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166. Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court

shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The petitioner bears the burden of proving his claims at the hearing by a preponderance of the evidence. *Thompson*, 587 F. Supp. 2d at 122 (citing *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973)).

## II. DISCUSSION

*A.     Casseday's Claim that Counsel Ignored His Instructions to File an Appeal*

Casseday contends that his counsel was constitutionally ineffective for failing to file a notice of appeal despite his explicit instructions to do so. The Supreme Court has held that criminal defendants have a right to "reasonably effective" legal assistance, and a defendant claiming ineffective assistance of counsel must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The *Strickland* standard has been extended to claims that a defense counsel rendered ineffective assistance by failing to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). However, the Supreme Court has explained that when counsel has consulted with the defendant about the advantages and disadvantages of filing an appeal and made a reasonable effort to discover the defendant's wishes, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478. Where defense counsel has not consulted with the defendant about filing an appeal, the court must determine whether counsel's failure to consult constitutes deficient performance. *Id.* "[C]ounsel has a constitutionally imposed duty to consult" only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are

4

nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480; *see also United States v. Taylor*, 339 F.3d 973, 978 (D.C. Cir. 2003).

As noted above, Casseday declined to present any testimony or other evidence in support of his contention that he instructed his former counsel, Danielle C. Jahn, to file a timely notice of appeal on his behalf. Ms. Jahn testified at the hearing that she met with Casseday after the sentencing hearing and explained that there was no basis for an appeal because he had received the sentence to which he had agreed.[3] Ms. Jahn further testified that Casseday never asked her to file a notice of appeal, and Casseday never mentioned an appeal in any letters that he sent to her following the sentencing. The Court finds Ms. Jahn's testimony to be credible and uncontroverted. Accordingly, the Court finds that there is no factual basis for Casseday's claim that his counsel was constitutionally ineffective for failing to file a notice of appeal.

Because the Court finds that Casseday did not instruct his counsel to file an appeal, Casseday cannot establish cause excusing his failure to raise his other claims on direct appeal. Accordingly, Casseday's other claims are procedurally defaulted and need not be considered on their merits. *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008). The Court shall, however, proceed to consider the other two remaining claims asserted by Casseday.

    *B.*    *Casseday's Claim that Counsel Coerced His Answer During the Plea Colloquy*

In one of his supplemental filings to his § 2255 Motion, Casseday claims that he was coerced by his counsel into responding affirmatively to the Court's question during the

---

[3] At the government's request, and without objection by Casseday, the Court adopted the statements made by Ms. Jahn in her declaration opposing Casseday's § 2255 Motion as part of her testimony.

5

November 20, 2006 plea colloquy regarding his intent to entice a person purporting to be a child to engage in a sexual act. "To have a plea set aside on a section 2255 petition, the petitioner must show that the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C. Cir. 2001) (quotation marks and citations omitted). The Court held an evidentiary hearing in part to determine whether Casseday's alleged coercion fundamentally tainted his plea.

>The relevant part of the transcript from the plea colloquy reads as follows:
>
>[The Court:]  And was it your intent, in having this discussion with her ["daddysgrl.dc"] and then later setting up a meeting, to have vaginal intercourse with the child?
>
>[Casseday:]  May I talk to my attorney before I answer that, please?
>
>[The Court:]  Yes.
>
>  (Attorney/client conference.)
>
>[Casseday:]  Would you please repeat the question?
>
>[The Court:]  Sure. In this chat you had with ["daddysgrl.dc"] on[]line, did you indicate through this conversation that you intended to engage in some form of vaginal intercourse with ["daddysgrl.dc"]? In other words, in this conversation?
>
>[Casseday:]  In the conversation, that's what happened, yes, Your Honor.

11/20/06 Tr. at 38. In a supplemental affidavit, Casseday claims that during the conference with his counsel in the middle of this line of questioning, he told Ms. Jahn that he could not answer this question affirmatively because there was no intent to commit any crime. *See* [61] Aff. in Supp. of Rule 7 ¶ 6. Casseday contends that Ms. Jahn "insisted" that he answer affirmatively, stomping her foot at him, and that he felt compelled, under duress, to make an involuntary

6

statement under oath. *Id.* ¶¶ 7-8.

Because Casseday declined to reassert these allegations during the evidentiary hearing, there is no evidence in the record to support his claim that he was coerced during the plea colloquy. In the alternative, the Court heard the testimony of Ms. Jahn on this issue, and she testified that she never instructed Casseday how to answer the questions during the plea colloquy and never stomped her foot, nor did the Court observe her doing so. Ms. Jahn further testified that she repeatedly discussed the issue of intent with Casseday before and during the plea colloquy and that she did not coerce him to accept the plea agreement. Ms. Jahn explained that Casseday had concerns about the intent element of the crime because he did not want to admit that he intended to have sex with an alleged thirteen-year-old girl when he drove to the location where he had arranged a meeting over the internet. However, the Court's revised question during the colloquy related only to Casseday's intent during the internet chat, and Ms. Jahn explained that Casseday was not contesting his conduct during the internet chat. The Court finds Ms. Jahn's testimony to be credible and uncontroverted. The Court also notes that Casseday never raised any concerns about coercion during his amended plea hearing on December 21, 2006 or at his sentencing on February 15, 2007. Therefore, the Court finds that Casseday's claim that he was coerced by his counsel during the plea colloquy to be wholly without merit.

    *C.    The Court's Failure to Provide a Written Statement of Reasons for the Sentence*

Casseday's final remaining claim is that the Court violated rule 11(b)(1)(M) and 18 U.S.C. § 3553(c) by failing to inform him of the reasons for his sentence, which departed from the range prescribed by the federal Sentencing Guidelines. The Court notes that this claim is procedurally defaulted because Casseday failed to raise this issue on direct appeal, and, as explained above, he has not established "cause" to excuse this default. Therefore, Casseday's

claim can be denied on this basis. Alternatively, the Court shall consider whether Casseday suffered any actual prejudice from the Court's failure to provide him with a written statement of reasons for his sentence.

> At the time of Casseday's sentencing, Rule 11(b)(1) provided:
>
> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following: . . .
>
> (M) the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart from those guidelines under some circumstances . . . .

FED. R. CRIM. P. 11(b)(1) (2007).[4] At the time of sentencing, 18 U.S.C. § 3553(c) provided as follows:

> (c) Statement of reasons for imposing a sentence.—The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—
> . . .
> (2) is not of the kind, or is outside the range [prescribed by the Sentencing Guidelines], the specific reasons for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment . . . .

18 U.S.C. § 3553(c) (2007).[5] The Sentencing Guidelines also dictate that the court provide a statement of reasons for approving a Rule 11(c)(1)(C) plea agreement that includes a sentence that departs from the guidelines:

---

[4] Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), Rule 11(b)(1)(M) was amended so as to require the court to explain "in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)." FED. R. CRIM. P. 11(b)(1)(M).

[5] This provision has since been amended so as to provide that the statement of reasons is separated from the written order of judgment. *See* 18 U.S.C. § 3553(c) (2010).

8

> In the case of a plea agreement that includes a specific sentence (Rule 11(c)(1)(C)), the court may accept the agreement if the court is satisfied either that:
>
> (1) the agreed sentence is within the applicable guideline range; or
>
> (2) (A) the agreed sentence departs from the applicable guideline range for justifiable reasons; and (B) those reasons are specifically set forth in writing in the statement of reasons or judgment and commitment order.

U.S. SENTENCING GUIDELINES MANUAL § 6B1.2 (2007). The D.C. Circuit has held that a district court's failure to provide a statement of reasons as required by § 3553(c) is plain error, even if the court has otherwise stated in open court its reasons for the departure from the guidelines. *See In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *id.* at 198 n.3 (dissenting opinion) (noting that the district court had stated its reasons for the departure in open court).

As the Court explained in its prior ruling, the record in this case shows that the Court did inform Casseday of the reasons for his sentence during the amended plea colloquy and sentencing. *See* 723 F. Supp. 2d at 155. However, a written statement of reasons was not provided in the order of judgment, despite the requirements of § 6B1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(c). Therefore, the issue is whether the Court's failure to reduce its reasons for the departure to writing in the judgment and commitment order—essentially a procedural error in the sentencing—warrants relief under § 2255.

To succeed on his claim, Casseday must demonstrate prejudice that is "'significantly greater' than that necessary under the plain-error doctrine." *United States v. Saro*, 24 F.3d 283, 287 (D.C. Cir. 1994) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)). "It is settled that a § 2255 motion is not meant to be a substitute for a direct appeal and that 'it does not encompass all claimed errors in conviction and sentencing.'" *United States v. Pollard*, 959 F.2d 1011, 1028 (D.C. Cir. 1992) (quoting *United States v. Addonizio*, 442 U.S. 178, 184-85 (1979)). The

extraordinary remedy afforded by § 2255 is reserved for curing "fundamental defect[s] which inherently result[] in a complete miscarriage of justice" or "omission[s] inconsistent with with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962); *see id.* (upholding denial of § 2255 motion asserting violation of procedural rule requiring the sentencing court to give the defendant an opportunity to speak before sentencing). Therefore, the fact that the Court's omission of a written statement of reasons might constitute plain error on direct review does not mean that Casseday is entitled to relief. In this case, the record demonstrates that the Court provided Casseday with a statement of reasons in open court during his sentencing, and Casseday affirmed on the record that he understood the reasons for his sentence during the amended plea colloquy. *See* 723 F. Supp. 2d at 144-46. In fact, the Court imposed the sentence to which Casseday explicitly agreed under Federal Rule of Criminal Procedure 11(c)(1)(C). Therefore, Casseday cannot credibly claim that he was unfairly prejudiced by his failure to receive a written statement of reasons for his sentence. *Accord Carver v. United States*, No. 2:06-CV-157, 2007 WL 2156706 (E.D. Tenn. July 25, 2007) (denying § 2255 motion by defendant who received negotiated sentence pursuant to Rule 11(c)(1)(C)). The Court finds that this procedural error in sentencing is not remediable by § 2255, and therefore the Court shall deny Casseday's claim for relief.

### III. CONCLUSION

By failing to present evidence at the evidentiary hearing, Casseday has failed to satisfy his burden of proof with respect to his claims that his counsel was ineffective for failing to file an appeal and that his counsel coerced him to answer a question during the plea colloquy. As a result, Casseday cannot establish cause excusing his failure to raise his § 2255 claims on direct appeal. Therefore, the Court finds that Casseday's procedurally defaulted claims may be

dismissed without reaching their merits. Alternatively, the Court finds, based on the record produced at the evidentiary hearing, that Casseday did not instruct his counsel to file a notice of appeal and that Casseday was not coerced by his counsel during the plea colloquy. Additionally, the Court finds that Casseday was not significantly prejudiced by the Court's failure to provide him with a written statement of reasons for his sentence in accordance with 18 U.S.C. § 3553(c), and therefore he is not entitled to relief under § 2255 for that error. Accordingly, the Court shall DENY Casseday's § 2255 Motion in its entirety. An appropriate Order accompanies this Memorandum Opinion.

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge